# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| CAMILLE MAE KRAMER,<br><br>            Plaintiff,<br><br>vs.<br><br>WASATCH COUNTY SHERIFF'S OFFICE, WASATCH COUNTY, KENNETH VAN WAGONER, and BRIAN GARDNER,<br><br>            Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:08-CV-475 TC |

      Plaintiff Camille Kramer was a bailiff in the Wasatch County Sheriff's Department where Sargent Rick Benson also worked. Ms. Kramer claims that Sargent Benson sexually harassed her, including sexually assaulting her on multiple occasions and on one occasion raping her at his home. Ms. Kramer alleges that Wasatch County, Sheriff Van Wagoner, and Detective Brian Gardner (together "Wasatch County"[1]) violated Title VII of the Civil Rights Act of 1964 both because Wasatch County is subject to vicarious liability for Sergeant Rick Benson's sexual harassment, and because it has direct liability for its own actions in failing to adequately respond to Sergeant Benson's sexual harassment. Ms. Kramer also alleges that when she reported the harassment to Wasatch County, Wasatch County retaliated against her by instituting a sham

---

[1] At the March 2, 2011, hearing on Wasatch County's motion for summary judgment, the parties stipulated that Wasatch County Sheriff's Department is not a proper defendant in this case.

investigation that led to the suspension of her Peace Officer Standards and Training (POST) certification and ultimately her constructive discharge.

Wasatch County denies both that Sergeant Benson was Ms. Kramer's supervisor and that Ms. Kramer was subject to any adverse employment actions, thereby shielding it from vicarious liability for Sergeant Benson's actions. And, according to Wasatch County, its response to the allegations of Sergeant Benson's sexual harassment was by law reasonable–shielding it from direct liability for any hostile work environment created by Sergeant Benson. Because there are material fact in dispute, and for the reasons set forth more fully below, the court denies Wasatch County's motion for summary judgment.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat. Bank of Ariz. v. Cities Serv., 391 U.S. 253, 289 (1968)).

---

[2] Although at oral argument both parties appeared prepared to argue about the viability of Ms. Kramer's claims under 42 U.S.C. § 1983, and Ms. Kramer later submitted a memorandum in support of her causes of action under 42 U.S.C. § 1983 (dkt. no. 57), careful review of the second amended complaint (dkt. no. 40) reveals that Ms. Kramer has only pled causes of action under Title VII. Accordingly, the court only considers Ms. Kramer's claims that Wasatch County violated Title VII.

## ANALYSIS

### TITLE VII SEXUAL DISCRIMINATION CLAIM

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

#### Vicarious Liability

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).

#### A Reasonable Jury Could Find that Sargent Benson was Ms. Kramer's Supervisor

Whether Sargent Benson was Ms. Kramer's supervisor is a disputed issue of material fact. According to Wasatch County, Sargent Benson had seniority over Ms. Kramer but was not her supervisor because he did not have the authority to affect her benefits or pay, to promote her or to fire her. (See Mem. in Supp. to Mot. for Summ. J. at 16.) According to Ms. Kramer, Sargent Benson was Ms. Kramer's supervisor because he was in charge of her employee evaluations and had the ability to control her work schedule, assign her to specific tasks, and

3

recommend that she be fired or promoted. (Mem. in Opp. to Mot. for Summ. J. at 2.) Taking all inferences in favor of Ms. Kramer, for purposes of this analysis the court holds that a reasonable jury could find that Sargent Benson was a supervisor with authority over Ms. Kramer.

In addition, according to Ms. Kramer, Sargent Benson told her that he had the ability to fire her, and she believed him. "If . . . there is a false impression that the [sexual harasser] was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." Ellerth, 524 U.S. at 759. Whether Ms. Kramer's belief was reasonable is a question of fact for the jury, but Wasatch County has proffered little if any evidence that the belief was not reasonable.

### A Reasonable Jury Could Find that Ms. Kramer Suffered a Tangible Employment Action

Ms. Kramer alleges that Sargent Benson "conditioned acceptable performance reviews, road experience necessary for job promotions, and good work shifts and vacation requests on [Ms. Kramer's] submission to his sexual advances." (Mem. in Opp. to Mot. for Summ. J. at 9.)

By law, denying specific vacation requests does not rise to the level of a tangible employment action because it does not cause a significant change in benefits. See Ellerth, 524 U.S. at 761; Kennedy v. Gen. Motors Corp., 226 F.Supp. 2d 1257, 1269 (D. Kan. 2002).[3]

However, Ms. Kramer alleges that, after she refused his advances, Sargent Benson reassigned her to monitor the metal detector full-time, the most undesirable work assignment that an employee in Ms. Kramer's position could have, and refused to give her road experience

---

[3] Of course, denying specific vacation requests can contribute to a hostile work environment actionable under Title VII.

(patrolling, serving warrants, etc.), the most desirable work assignment that an employee in Ms. Kramer's position could have. A reasonable jury could find that this reassignment was a tangible employment action. Similarly, whether Ms. Kramer received a negative performance review because she refused to submit to Sargent Benson's advances and, if she did, whether receiving the negative performance review under those circumstances rises to the level of a tangible employment action are questions of fact for the jury.[4]

### A Reasonable Jury Could Find that Ms. Kramer has Alleged a Hostile Work Environment

Even if a jury were to find that Ms. Kramer did not suffer a tangible employment action, a question of fact exists regarding whether Sargent Benson's behavior created a hostile work environment and, if so, whether Wasatch County has proved by a preponderance of the evidence that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that Ms. Kramer unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

To recover for a Title VII claim of sex discrimination based on a hostile work environment, "a plaintiff must show (1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment. Pinkerton v. Colo. Dep't. of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009) (quoting Medina v. Income Support Div., 413 F.3d 1131, 1134 (10th Cir. 2005)).

---

[4] If Ms. Kramer suffered a tangible employment action at the hands of Sergeant Benson, Sergeant Benson was necessarily Ms. Kramer's supervisor. See Ellerth, 524 U.S. at 762-63.

Ms. Kramer alleges that Sargent Benson constantly demanded a foot massage from her and even obtained a "doctor's note" for the massage. (Mem. in Supp. to Mot. for Summ. J., Ex. 2 (Kramer Dep.) at 64:19-23.) After Ms. Kramer finally agreed to give him a foot massage, Sargent Benson grabbed her arm and pulled her on top of him. (Id. at 67:6-68:11.) Because Ms. Kramer refused his sexual advances, Sargent Benson refused to give her road experience, which was important for job promotions. Instead, he gave the road experience to Ms. Kramer's male coworker.

When Sargent Benson finally took Ms. Kramer on the road, he sexually assaulted her twice–once at his home and once in the patrol car. Because Ms. Kramer resisted the assaults, Sargent Benson punished her with eight-hour shifts at the metal detector without bathroom breaks, denied her vacation time requests, and refused to give her road experience. Sargent Benson conditioned acceptable performance evaluations on Ms. Kramer's silence about his sexual assaults.

Finally, Sargent Benson continually harassed Ms. Kramer in front of her co-workers about her refusing to clean his house for money. When Ms. Kramer, who was employed as a housekeeper before working at the Sheriffs's Department, agreed to clean Sargent Benson's house, he forcibly raped her while her children were outside. These allegations, if true, are certainly severe and pervasive enough for a reasonable jury to find that they constituted a hostile work environment.

Once Ms. Kramer told her coworkers about Sargent Benson's harassment and rape, the state investigated and Sargent Benson was fired. However, before Ms. Kramer's allegations surfaced, the county had information that Sargent Benson "may have been sexually active with

two [confidential informants] when he worked in narcotics," (Mem. in Supp. to Mot. for Summ. J., Ex. 5 (Van Wagoner Dep.) at Ex. 23 ¶ 8.) But there is no evidence that the county investigated those allegations or otherwise exercised reasonable care to prevent and correct promptly the alleged sexually harassing behavior. In addition, the county was aware that Sergeant Benson had intimidated certain other female court employees. (Mem. in Supp. to Mot. for Summ. J., Ex. 5 (Van Wagoner Dep.) at Exs. 15, 16.)

And when Ms. Kramer had earlier complained to Sheriff Van Wagoner that she was subjected to sexual harassment from other county employees, Sheriff Van Wagoner held a meeting in which he acted out the very scenes that Ms. Kramer had complained of, with her playing the victim, before telling the employees that that behavior constituted harassment and was unacceptable. Ms. Kramer felt that the meeting was humiliating. A reasonable jury could find that Ms. Kramer failing to take advantage of the county's preventive or corrective opportunities was not unreasonable. Further, Ms. Kramer alleges that she could not go to the human resources office because Sergeant Benson tracked her movements and would have seen her go in to complain. A reasonable jury could find that Ms. Kramer failing to report Sergeant Benson's harassment to human resources not unreasonable under the circumstances.

### Direct Liability

An employer is directly liable when the sexual harassment is attributable to the employer's own negligence. Ellerth, 524 U.S. at 758. "An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." Id. at 759. Again, there is a material fact in dispute. There is the question of whether the county handled the earlier allegations of sexual misconduct by Sargent Benson properly, and whether it

handled Sergeant Benson's intimidation of the female court employees properly. And, according to Ms. Kramer, much of Sergeant Benson's harassment took place in public. (Mem. in Supp. to Mot. for Summ. J., Ex. 2 (Kramer Dep.) at 63-67; 76-77). Taken together, a reasonable jury could find that the county knew or should have known about Sargent Benson's sexual harassment.

### TITLE VII RETALIATION CLAIM

Title VII contains an anti-retaliation provision that prohibits an employer from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII or because the employee has participated in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a); see Pinkerton v. Colo. Dep't. of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). Because Ms. Kramer seeks to prove her Title VII retaliation claim through indirect or circumstantial evidence, the court applies the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id.

"To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Pinkerton, 563 F.3d at 1064 (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006)).

A challenged action is materially adverse if the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006) (quotations omitted).

If Ms. Kramer establishes a prima facie case of retaliation, the burden of production shifts

to Wasatch County to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See Pinkerton, 563 F.3d at 1064. If Wasatch County meets this burden, then summary judgment is warranted unless Ms. Kramer can show that there is a genuine issue of material fact as to whether the reasons for the adverse employment action proffered by Wasatch County are pretextual. See id.

According to Ms. Kramer, "Wasatch County took adverse employment actions against her because she engaged in a 'protected activity' under Title VII by harassing her about her personal sexual relationships, (i.e. private information about her unborn child) that had nothing to do with her reports about Benson's sexual harassment, by attempting to intimidate her into resigning from Wasatch County, and by reporting her to POST and having her POST certification taken away and demanding her badge, gun and uniform." (Mem. in Opp. to Mot. for Summ. J. at 19.) The court examines each alleged adverse employment action in turn.

### Investigation into Personal Sexual Relationships

Ms. Kramer told three coworkers about Sergeant Benson's sexual harassment and rape and gave them permission to report the allegations. (Mem. in Supp. to Mot. for Summ. J., Ex. 3 (Kramer Dep.) at 110:9-112:21.) As a result, she says, the Sheriff's Department began an investigation into Ms. Kramer's personal sexual relationships. Ms. Kramer was pregnant, but she told the Sheriff's Department investigator that Sergeant Benson was not the father. (Id. at 119:18-23.) The investigator told her that she would not be believed about the rape unless she disclosed who the father was. (Id. at 120:10-17.) Then, having learned that the father was a married firefighter employed by the county, the investigator asked details regarding when and

where the two had had sex.  (Id. at 121:18-23.)

During the investigation, the investigator suggested "as a friend, " but at the behest of Sheriff Van Wagoner that Ms. Kramer resign.  (Mem. in Supp. to Mot. for Summ. J., Ex. 13 (Gardner Dep.) at 27:12-22.)  Sheriff Van Wagoner reported Ms. Kramer to POST for having had sex with the firefighter while he was on-duty (Mem. in Supp. to Mot. for Summ. J., Ex. 5 (Van Wagoner Dep.) at 49:8-17), which resulted in her losing her POST certification for a year.  (Mem. in Supp. to Mot. for Summ. J., Ex. 3 (Kramer Dep.) at 131:21-132:4.)

A reasonable jury could find that the investigation that led to the suspension of Ms. Kramer's POST certification was a materially adverse action.  If the result of reporting sexual harassment is an investigation into one's personal sexual relationships, a reasonable worker might be dissuaded from making or supporting a charge of discrimination.  Accordingly, viewing the evidence in the light most favorable to Ms. Kramer, she has established a prima facie case of retaliation.

There is a disputed issue of material fact as to whether Wasatch County has articulated a legitimate, nondiscriminatory reason for 1) instituting the investigation into Ms. Kramer's personal sexual relationship and 2) pursuing the investigation into Ms. Kramer's personal sexual relationship.  First, the investigator admits he asked Ms. Kramer who the father of her baby was after she told him that the father was not Sargent Benson.  Although he claims he did so as a friend, according to Ms. Kramer he told her that she would not be believed about the rape unless she disclosed who the father was.  There is no legitimate, nondiscriminatory reason for forcing Ms. Kramer into choosing whether to in effect retract her allegations of sexual harassment and

rape or else disclose the father of her baby.

Once the investigator learned that the father was a county employee, Wasatch County claims a legitimate, nondiscriminatory reason for inquiring further into the relationship. If the couple were having sex while on duty, the public safety could be in jeopardy. But the county had no reason to believe that the couple had had sex while either person was working. Further, Ms. Kramer claims that the investigator asked how many times the couple had had sex, when, and where. (Mem. in Supp. to Mot. for Summ. J., Ex. 3 (Kramer Dep.) at 121:18-23.) Again, there a question of fact regarding whether Wasatch County has articulated a legitimate, nondiscriminatory reason for inquiring about the details of Ms. Kramer's sex life without any reason to believe that any misconduct had occurred.

### Asking for Resignation

There is a genuine issue of material fact regarding whether 1) asking for an employee's resignation is a materially adverse action and whether 2) Ms. Kramer was asked to resign in retaliation for her protected activity.

### Reporting to POST

Again, there is a genuine issue of material fact regarding whether Sheriff Van Wagoner reported Ms. Kramer's "sexual misconduct" to POST because he was under an obligation to report any such behavior or out of retaliation for Ms. Kramer's protected activity.

### Having POST Certification Taken Away

Ms. Kramer has not provided any evidence that Wasatch County had the power to have Ms. Kramer's POST certification taken away, or any control over the process once it made the

report to POST. Without any evidence that Wasatch County had Ms. Kramer's POST certification taken away, no reasonable jury could infer that a causal connection existed between the protected activity and the materially adverse action.

### Demanding Badge, Gun and Uniform

Ms. Kramer has provided evidence that at some point an officer called Ms. Kramer's attorney to facilitate the return of her badge, gun, and possibly uniform. (Mem. in Supp. to Mot. for Summ. J., Ex. 12 (Bonner Dep.) at 17:24-18:3.) The officer said that Sheriff Van Wagoner had asked him to get the firearm and badge for safety reasons. (Id. at 18:4-25.) Here, Ms. Kramer has provided no evidence to show that there is a genuine issue of material fact as to whether the proffered reason for collecting the badge, gun, and uniform at some unknown date is pretextual. Without any evidence about when the badge, gun, and uniform were collected, no reasonable jury could infer that they were collected in retaliation for Ms. Kramer's complaint instead of for legitimate safety reasons.

### ORDER

For the foregoing reasons, Wasatch County's motion for summary judgment (dkt. no. 45) is denied. However, there is insufficient evidence for Ms. Kramer to support a retaliation claim under Title VII where the alleged adverse employment action was the suspension of her POST certification or the collection of her badge, gun, and uniform.

SO ORDERED this 31st day of March, 2011.

                              BY THE COURT:

                              *Tena Campbell*

                              TENA CAMPBELL
                              United States District Judge